IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                                       CR 15-4112 RB/JHR
                                                                     CIV 17-0932 RB

CARLOS TAFOYA, JR.,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on Petitioner/Defendant Carlos Tafoya, Jr.'s ("Petitioner" or "Mr. Tafoya") Motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Doc. 250).[1] Petitioner argues that he received ineffective assistance of counsel, and the Court should grant him an evidentiary hearing, and vacate his sentence and judgment. The Court has satisfied itself that Petitioner's Motion is limited to only matters of law, and its disposition requires no further factual development or evidentiary hearing. *See* 28 U.S.C. § 2255(b) (providing that a court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."). Having thoroughly reviewed the submissions of the parties, the record before the Court, including the Presentence Investigation Report (Doc. 199), and the relevant law, the undersigned recommends[2] that Mr. Tafoya's motion be denied, because he has not stated a plausible claim that he received ineffective assistance of counsel.

---

[1] Citations to "Doc." are to the document number provided in the criminal case, CR 15-4112 RB/JHR.
[2] The Honorable Robert C. Brack referred this case to the undersigned to recommend an ultimate disposition on September 12, 2017. (Doc. 251).

1

## Background and Procedural Facts

On November 19, 2015, Mr. Tafoya was indicted for conspiring to distribute methamphetamine, contrary to 21 U.S.C. §§ 841(a)(1) and 21 U.S.C. § 841(b)(1)(A) for events occurring between April 9, 2015 and October 16, 2015. (Doc. 3). On April 18, 2016, Mr. Tafoya filed a Motion to Appoint New Counsel to replace his first defense counsel. (Doc. 105). District Judge Brack granted Plaintiff's motion, and Plaintiff was appointed Mario A. Esparza as substitute counsel. (Doc. 114; Doc. 115). On August 15, 2016, Mr. Esparza made a *Giglio* request for evidence from the United States of bias and credibility of witness, government promises of favorable treatment, prior criminal records, and prior testimony and statements. (Doc. 133). On September 7, 2016, a definite trial setting was set for December 12, 2016. (Doc. 149). On September 21, 2016, a superseding indictment was entered, charging Mr. Tafoya with conspiracy to distribute 50 grams or more of methamphetamine as well as distributing, and possessing with intent of distributing, 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c), for events taking place on November 13, 2015, after the original indictment and while Mr. Tafoya was on supervised release.

On September 2, 2016, Mr. Tafoya filed a motion to dismiss his charges *pro se*, but while still represented by counsel. (Doc. 150). On September 19, 2016, the United States filed a Motion to Strike Mr. Tafoya's *pro se* filing. (Doc. 155). On September 27, 2016, Mr. Esparza filed a response to the United States' Motion to Strike, informing the Court that "Defendant [Carlos Tafoya] filed his Motion pro se after defense counsel advised him not to do so," and that there was "no case law or statute which supports the pro se Motion filed by the Defendant."

(Doc. 162 at 1-2). District Judge Robert C. Brack granted the United States' Motion to Strike Defendant's Pro Se Filing on October 14, 2016. (Doc. 171).

The United States then filed a Motion in Limine to Exclude Proposed Expert Testimony Witness on October 7, 2016, which sought to exclude Mr. Tafoya's handwriting expert, Curt Baggett, whom Mr. Esparza sought to introduce to impeach the United States' witness, DEA Special Agent Amy Billhymer. (Doc. 168). Mr. Esparza filed a response to the Motion in Limine, in which he argued that Mr. Baggett's expert testimony "would assist the jury in understanding the evidence…that a signature on the document [in question] was forged, [and] …in determining how much weight to give that document." (Doc. 190 at 3). The Court held a status hearing on November 3, 2016, during which the Government's witness, DEA Special Agent Amy Billhymer, testified that she was at 703 Giles Lane[3], Socorro, New Mexico, on November 13, 2015, conducting two search warrants on Petitioner and his parents. (Doc. 256-1 at 6-7). She also testified that a State search warrant was executed on that day, and that she had executed DEA Form 12, which provides a receipt for cash or items that are seized. (*Id.* at 7). After cross-examination, the United States requested the Court to set the matter for a *Daubert* hearing to exclude Mr. Tafoya's handwriting expert. (*Id.* at 12-13). Mr. Eparza responded that he wanted an "opportunity to put on an expert witness document to examine Mr. [C]arl Baggett who is of the opinion that the signature on the return receipt, the inventory return receipt, is not that of…Special Agent Billhymer in this matter." (*Id.* at 13-14). On November 4, 2016, the Court gave notice of a hearing on the Motion in Limine, to be held on November 29, 2016. (Doc. 182).

However, prior to the hearing on the Motion in Limine, Mr. Tafoya executed a plea agreement with the United States (Doc. 194), and the Court held a Change of Plea Hearing on

---

[3] This referenced address appears to be an error. The address in question has consistently been labeled in the record as 704 Giles Lane, Socorro, NM 87801.

November 14, 2016. (Doc. 195). In the plea agreement, Mr. Tafoya agreed to waive his right to a trial by jury including confronting and cross-examining witnesses, his appeal rights, and his right to collaterally attack his sentence except as to his defense counsel's effective assistance. (Doc. 194 at 1-2, 5). At the plea hearing, Petitioner swore before the Court that he was satisfied with his counsel's advice, and that he had no complaints about his counsel. (Doc. 256-2 at 13:19-24). Petitioner was ultimately sentenced to 156 months imprisonment for Counts 2 and 3, to run concurrently with one another. (Doc. 242 at 3).

On September 8, 2017, Petitioner filed *pro se* his Motion to Vacate under 28 U.S.C. § 2255. (Doc. 250). On September 22, 2017, the undersigned ordered Defendant United States of America to answer Petitioner's motion for § 2255 relief within 23 days of entry of the order. (Doc. 252). After moving for an extension to file its response on September 25, 2017 (Doc. 253), Defendant filed its response on November 7, 2017. (Doc. 256). On December 4, 2017, Petitioner filed a motion for an extension of time to file a reply in support of his Section 2255 Motion, which the Court granted. (Doc. 261; Doc. 262). However, he never filed a reply brief, and his Section 2255 Motion is now ripe for hearing.

## **LEGAL STANDARD**

Pursuant to 28 U.S.C. § 2255, a federal prisoner who:

> claim[s] the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

28 U.S.C. § 2255(a). Relief is available under Section 2255 only if "the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (internal quotation marks and citation omitted).

The court must presume "that the proceedings leading to the conviction were correct," and the burden is on the movant to demonstrate otherwise. *Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989) (citing *United States v. Morgan*, 346 U.S. 502, 512 (1954)).

## ANALYSIS

For a defendant to succeed on a claim of ineffective assistance of counsel, he must demonstrate both that: (1) "counsel's representation fell below an objective standard of reasonableness"; and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). In applying the two-pronged *Strickland* test, the Court "may address the performance and prejudice components in any order, but need not address both if [the defendant] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir. 1998). *Strickland* recognized that the "availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges." *Id.* at 690. Therefore, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time," and counsel are afforded a "strong presumption that [their] conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

In addition to proving that the criminal defendant's counsel's performance fell below an objective standard of reasonableness, a petitioner must also prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Supreme Court reasoned that the requirement to prove the petitioner suffered prejudice from entering a guilty plea was necessary because a professionally

unreasonable error by counsel, by itself, does not warrant setting aside a judgment if that error had no effect on the ultimate outcome of the criminal proceeding. *Id.* at 691.

> I. **Petitioner's Defense Counsel Performed Reasonably at the Plea Stage, and Petitioner Has Not Shown that the Outcome of the Proceedings Would Have Been Different But for Counsel's Deficient Performance.**

The "Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings," including arraignments, post-indictment lineups, and the plea bargaining process. *Missouri v. Frye*, 566 U.S. 134, 140 (2012); *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) ("Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process."). The two-part *Strickland* test "applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010) ("Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'"). "Surmounting *Strickland's* high bar is never an easy task," and "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies" and instead "look to contemporaneous evidence to substantiate a defendant's express preferences." *Lee v. U.S.*, 137 S. Ct. 1958, 1967 (June 23, 2017) (internal citations omitted).

In reviewing the prejudice suffered by a criminal defendant as a result of ineffective assistance at the plea negotiations stage, the Court "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. When defense counsel has failed to advise a client on an easily determinable legal issue at the plea stage, such as when an attorney could find that the consequence of a conviction will result in a client's deportation from a reading of the removal statute's plain text, counsel's representation is

constitutionally deficient under *Strickland*. *Padilla*, 559 U.S. at 368–69. Ultimately, "[i]n the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163.

> Petitioner argues that his trial counsel
>
> basically coerced [him] into taking a plea from the Government by suggesting to his family and his significant other[] that they convince Petitioner to take whatever deal offered by the Government or he would get the wors[t] penalty possible. At no time did counsel attempt to prepare for a trial as requested by Petitioner because there were several errors made by the Government in their case in chief, i.e. search of a residence not owned or resided in by Petitioner, seizure of suspected narcotics from premises, which amounted to an illegal search and seizure under the Fourth Amendment.

(Doc. 250 at 23).

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). The voluntariness of the defendant's plea when he is represented by counsel depends on whether his counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *Id.* (quoting *McMann v. Richardson,* 397 U.S. 759, 771 (1970)).

Contrary to Petitioner's contention that his attorney did not "attempt to prepare for a trial" as he "requested," (Doc. 250 at 23), the record illustrates that Petitioner's attorney was preparing for trial and had fully intended on introducing Petitioner's handwriting expert at trial to impeach the Government's DEA agent based on Petitioner's theory that her signature was forged. (*See* Doc. 148 (Unopposed Motion for Order for a Definite Trial Setting); Doc. 172 (Proposed Voir Dire, filed by Petitioner's trial counsel); Doc. 190 (Response to Motion in Limine to Exclude Proposed Exert Testimony Witness at Trial, as to Petitioner's handwriting

7

expert); Doc. 196 at 15:19-21 (in which Mr. Esparza discussed calling one or two witnesses at trial)).

Moreover, Petitioner's allegation that Mr. Esparza suggested to his family and significant other that they should convince Petitioner to accept a guilty plea is insufficient to establish that his counsel performed unreasonably such that his guilty plea was rendered involuntary. While a criminal defense attorney's coercion of his client to accept a guilty plea may render the plea involuntary, counsel's advice, or even vigorous urging, to plead guilty does not. *Fields v. Gibson*, 277 F.3d 1203, 1214 (10th Cir. 2002). This is because "one central component of a lawyer's job is to assimilate and synthesize information from numerous sources and then advise clients about what is perceived to be in their best interests," including advising a client to accept a guilty plea. *Id.* In other words, Mr. Esparza's alleged suggestion to Petitioner's family to convince him to accept a guilty plea falls within the he range of competence demanded of attorneys in criminal cases, and therefore does not constitute ineffective assistance of counsel. Petitioner makes no other allegation that Mr. Esparza coerced him into pleading guilty such as informing him that he had no other choice but to plead guilty. *Id.* at 1213. Therefore, Petitioner's allegations are insufficient to establish that Mr. Esparza's performance was deficient.

Moreover, the amount of evidence that the Government possessed against Petitioner shows that the result would not have been different had Mr. Esparza not advised Petitioner to plead guilty. Petitioner's mere allegation that he would have insisted on trial but for Mr. Esparza's alleged errors is therefore not reasonable. *See Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001) (holding that a mere allegation that a defendant would have insisted on trial but for counsel's errors is insufficient, and the strength of the prosecutor's case is often the best evidence of whether the defendant would have actually insisted on trial) (citing *Hill*, 474

U.S. at 59-60). Petitioner was not prejudiced by Mr. Esparza's advice to plead guilty. Thus, Petitioner has failed to make sufficient factual allegations to show both that his counsel performed inadequately, and that he suffered prejudice as a result. Therefore, without more than the allegations in his Petition, Petitioner's ineffective assistance of counsel claim fails as it pertains to Mr. Esparza's performance during the plea process.

## II. Petitioner's Counsel Performed Reasonably throughout the Case.

Petitioner makes two other sub-arguments that his counsel performed inadequately: (1) that his counsel failed to pursue the theory that the DEA Agent's signature on the property seizure forms was forged; and (2) his counsel failed to argue that the search and seizure of the residence where he was located when he was arrested was unconstitutional. While the Court will take each argument in turn, it must begin with the preface that an ineffective assistance of counsel claim does not require retrospective examination of all advice given by a criminal defense attorney. *Fields*, 277 F.3d at 1214. The Court will nonetheless entertain Petitioner's arguments in its thorough review of the merits of Petitioner's claims.

### a. Petitioner's Counsel Was Not Required to Introduce Expert Testimony After Petitioner Pled Guilty

Petitioner only raises this argument to the extent that he contends "Counsel was aware that there was an expert witness who would come to Court to testify that the document(s) allegedly signed by the supervising Agent on the case had been forged even after knowing that the Agent in question had come into Court and lied and stated that the document in question had been signed by her. Counsel never contested this testimony." (Doc. 250 at 31). However, it is clear that Mr. Esparza, Petitioner's counsel, was not only well aware of the handwriting expert but was prepared to defend his qualifications as an expert at a *Daubert* hearing and introduce him as an expert witness at trial. (Doc. 189). The only apparent reason Mr. Esparza did not present

9

the handwriting expert's testimony was because Petitioner pled guilty prior to the *Daubert* hearing. As discussed above, Petitioner has not shown that his plea was involuntary as a result of Mr. Esparza's deficient performance. Mr. Esparza was not required to present expert testimony after Petitioner pled guilty. Therefore, Petitioner's contention that it was ineffective assistance of counsel to fail to present expert testimony is unmeritorious.

However, even if Petitioner's contention that Mr. Esparza failed to follow through with the handwriting expert witness to impeach the DEA Agent's testimony is true, it is entirely speculative that the testimony would have had any effect on the outcome of the trial. The alleged forgery of the forms for the seizure of Petitioner's property would not have countered the heavy amount of evidence the Government held against him. Moreover, "the decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney." *Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008) (finding that defense counsel's failure to introduce any expert witness at trial was not ineffective assistance); *see also*, *Waterhouse v. Hatch*, 498 F. App'x 811, 813 (10th Cir. 2012) (unpublished) (finding that counsel's failure to introduce expert witness on minor victim's credibility "may have constituted deficient performance under *Strickland*," but "the potential value of such expert testimony would be speculative," and so the defendant did not suffer prejudice). In other words, Mr. Esparza's decision whether or not to call Mr. Baggett as an expert witness would not be subject to scrutiny under *Strickland* even if Mr. Tafoya had not entered his voluntary guilty plea.

### b. Petitioner's Counsel Was Not Obligated to Make an Unmeritorious Argument as to Petitioner's Claimed Fourth Amendment Violations.

Petitioner finally argues that his trial counsel should have filed a motion to suppress the evidence that was obtained at the residence where he was located when he was arrested, because it would not have been discovered but for the Government's alleged unlawful search. (Doc. 250

at 26-30). Petitioner contends that the arresting officers did not obtain a search warrant prior to entering the residence as they were required to do under the circumstances, and no search warrant would have been granted because the arresting officers lacked probable cause to search the residence. (*Id.* at 26-27). Petitioner concludes that any evidence that the Government possessed as a result of the unlawful search was fruit from the poisonous tree that could not have been introduced as evidence at trial. *Id.*

However, the Government paints a different picture of the facts behind the search of the residence in question. Prior to his arrest, undercover agents purchased in person 364.2 net grams[4] of methamphetamine that Petitioner removed from a bundle in his pants. (Doc. 256 at 8 (citing PSR, ¶ 56)). During a subsequent sale, on the date of Petitioner's ultimate arrest, he invited one of the undercover agents inside the residence in question to obtain the methamphetamine, then entered the residence and returned with the purchased amount of methamphetamine, and subsequently informed the agent that he had "two more in the house." (*Id.* at 9 (citing PSR, ¶ 58, and Doc. 256-7 (State of New Mexico warrant for search of 704 Giles Lane, Socorro, NM, 87801))). Petitioner's contention that the officers lacked probable cause to search the residence is highly dubious considering that Petitioner himself retrieved methamphetamine from inside the residence and informed the undercover officers that there was additional methamphetamine inside. Such actions and admissions surely create probable cause that additional contraband may be located inside the residence.

More importantly, however, Petitioner is simply incorrect that the arresting officers did not obtain a search warrant of the residence prior to seizing the evidence inside. The Government attached the State of New Mexico search warrant the arresting officers obtained for 704 Giles

---

[4] Respondent cites the amount of methamphetamine listed in the PSR as "346.2 net grams," while the PSR, where cited by Respondent, states that "two UCs (Undercover Agents) purchased 364.2 net grams" from Mr. Tafoya. (Doc. 260-1 at 14, ¶ 56).

Lane as an exhibit to its Response to Petitioner's Motion to Vacate. (*See* Doc. 256-6). Petitioner appears to acknowledge that a warrant was issued, but argues that the warrant was issued to search his parent's residence. (Doc. 250 at 27). However, it does not matter who owned the residence in question, but whether there was a search warrant for that particular residence where evidence was seized. The State of New Mexico warrant filed by the Government permitted the officers to search 704 Giles Lane, Socorro, NM, 87801, outside of which Petitioner was arrested, and prior to which he had personally retrieved methamphetamine from inside as well as informed the officers of more drugs located inside the residence. (Doc. 256-6 at 5).

Petitioner's insistence that Mr. Esparza should have filed a motion to suppress the evidence found inside 704 Giles Lane is unfounded. The search and seizure of the evidence at 704 Giles Lane was lawful as evidenced by the executed search warrant attached to the Government's Response. A motion to suppress the evidence based on an unlawful search and seizure would have been meritless. *See Jackson v. United States*, 252 F. App'x 918, 921 (10th Cir. 2007) (unpublished) (finding that "the failure of [] counsel to file a motion to suppress and his related pre-plea advice do not fall below an objective standard of reasonableness and do not constitute deficient performance.") (citing *Hill,* 474 U.S. at 56–58 and *United States v. Gibson,* 55 F.3d 173, 179 (5th Cir.1995) ("Counsel is not required by the Sixth Amendment to file meritless motions.")).

In addition, the amount of evidence outside of that seized from 704 Giles Lane was significant. Even if Mr. Esparza had successfully argued that the search was unlawful and that the evidence should have been suppressed, the Government had a strong case against Petitioner. He therefore cannot show that the result of the proceedings would have been different had Mr.

Esparza filed the motion to suppress and proceeded to trial, and therefore suffered no prejudice as a result. *See Miller*, 262 F.3d at 1075.

## CONCLUSION

For the foregoing reasons, the undersigned proposes to find that Mr. Tafoya's Motion and the record conclusively establish that he is not entitled to the relief he seeks. Consequently, the undersigned recommends that the Court DISMISS Mr. Tafoya's claim WITH PREJUDICE.

_____
JERRY H. RITTER
UNITED STATES MAGISTRATE JUDGE

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.